IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CARPENTERS' DISTRICT COUNCIL of GREATER ST. LOUIS, et al., Plaintiffs,

vs.

F. G. LANCIA CUSTOM WOODWORKING, LLC and FRANK LANCIA, Defendants.

Cause No. 4:06CV-1678CAS

DEPOSITION OF: FRANK LANCIA
Taken on behalf of Plaintiffs
January 8, 2009

COURT REPORTING ASSOCIATES
P.O. BOX 440014
ST. LOUIS, MISSOURI 63144
314-961-6306

Reported by Jane M. Rich, RPR, CCR, CSR (MO, IL & CA)



IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CARPENTERS' DISTRICT COUNCIL of GREATER ST. LOUIS, et al., Plaintiffs,

vs.

F. G. LANCIA CUSTOM WOODWORKING, LLC and FRANK LANCIA, Defendants.

Cause No. 4:06CV-1678CAS

DEPOSITION OF FRANK LANCIA, produced, sworn and examined on behalf of the Plaintiffs, between the hours of eight o'clock in the forenoon and six o'clock in the evening of that day, taken in shorthand, with the reporter being present at the law offices of Hammond, Shinners, Turcotte, Larrew & Young, 7730 Carondelet, Clayton, Missouri, taken by Jane M. Rich, a Certified Court Reporter, license #411, within and for the State of Missouri.

A P P E A R A N C E S

The Plaintiff was represented by Mr. Mike Evans, of the law firm of Hammond, Shinners, Turcotte, Larrew & Young, 7730 Carondelet, Clayton, Missouri 63105.

The Defendant was represented by Mr. Gregory O'Shea, Attorney at Law, 779 Lemay Ferry Road, St. Louis, Missouri 63125.





IT IS HEREBY AGREED, by and between Counsel for the Plaintiffs and Counsel for the Defendants, that this deposition may be taken in shorthand by JANE M. RICH, a Certified Court Reporter, license number 411, and transcribed into typewriting, and signature of the witness waived by agreement of counsel and consent of the witness.

o-0-o

FRANK LANCIA,

of lawful age, being produced and duly sworn upon his oath, testified on behalf of the Plaintiffs as follows:

DIRECT EXAMINATION

QUESTIONS BY MR. EVANS:

Q. We're here for Carpenters' District Council of Greater St. Louis, et al., versus F. G. Lancia Custom Woodworking, LLC, and Frank Lancia. Case number 4:06CV1673-CAS.

We have a judgment on June 5th of 2007 in the amount of $134,998.86.

Can you please state and spell your name for the record?

MR. O'SHEA: Before we get started on this thing, I want to make — I want to make an objection. There has already been an examination of judgment debtor in the situation on the part of Mr. Lancia, and I don't know under the law if you're entitled to keep taking these





things like you're doing, and this covers the same information, and so forth, that was covered in the first one.

So based on that, I'm going to object to this proceeding, because it's duplicitas, but subject to the objection, go ahead and answer the question. Okay.

Q. (By Mr. Evans) If you can state and spell your name for the record, please?

A. Frank Lancia, that's F-r-a-n-k L-a-n-c-i-a.

Q. And please state your address?

A. 303 High Meadows, Ballwin, Missouri.

Q. Okay. Now is F. G. Lancia Custom Woodworking, is that company still in business?

A. No. The entity's out there, but nothing's being done out of it anymore.

Q. When is the last time that F.G. Lancia Custom Woodworking did business?

A. The end of May.

Q. Do you anticipate doing any additional business with that company?

A. As of the moment, no, until I —

Q. Are you still making bids, or anything like that?

A. [Shaking head].

Q. Are you still trying to contact other people for

work — Excuse me, if you could answer yes or no?
A. No, no.
Q. It's hard to record that when shaking your head. It's perfectly natural, though.
Okay. So if we could backup then. Has F. G. Lancia Custom Woodworking placed any bids?
A. No.
Q. Have you tried to solicit work in any other ways for that company?
A. No.
Q. Let me ask you a question then about F. G. L. Woodworking and Audio Video. Are you familiar with that company?
A. Yes.
Q. Do you have an ownership interest in that company?
A. I'm an employee in there, yes.
Q. You're an employee. Do you have any ownership interest in that company?
A. Yes, I have a little bit, yeah.
Q. Okay. Who are the other owners of F. G. L. —
MR. O'SHEA: I'm going to object to any questions about F. G. L. Lancia. This is an examination for Frank Lancia, has nothing to do with this company. This company is not part of any lawsuit, or any judgment.





These questions are irrelevant, and anything — unless it's going to money that he might be owed to pay off this judgment, I'm going to, I'm going to object to those questions concerning that company.
MR. EVANS: Well, for the record here, I mean, questions about a related company are relevant in this matter, in that the new company might be liable for the debts of the old company under a variety of theories, all three go successorship, single employer, and for these reasons this is relevant to this matter.
MR. O'SHEA: These issues have not been raised in any pleadings, they have not been raised in any court, and under those circumstances they are not relevant, and I don't think that they — he will give you what information he can what might be owed to him by that company, but as far as their operation is concerned, and whatever, I just don't think it's relevant, and I just don't think he should answer that.
Q. (By Mr. Evans) Well, with regard to not having raised this in any pleadings, I mean, we're not going to file a motion to hold the second company liable without knowing anything about it. It might be a totally separate company and we won't file anything, but when you have discovery on that matter —
MR. O'SHEA: I think you got to file a whole new





lawsuit if you want to try to get them in on a judgment, or some sort of a suit to set aside, or break corporate veil, or whatever, under these conditions and circumstances.
I'm telling you this is premature.
MR. EVANS: Well, actually we can file what's called a creditor's bill and equity that it's filed under the caption of the first suit, that holds a second entity liable for the defendant in the first suit.
MR. O'SHEA: I don't think you can do it period without filing a suit. You haven't done it.
MR. EVNAS: All right.
MR. O'SHEA: You haven't done anything. We'll try to answer as best we can.
MR. EVANS: Okay.
MR. O'SHEA: But he'll let you know — You asked for some update on records, he's got some records from Lancia Company, he's got a pay stub from what he's making over there, but that's all he's got. He doesn't have anything else, nor access to anything.
A. You have all the old paperwork. It's the same stuff. Nothing's changed.
Q. (By Mr. Evans) Well, you know, I'll ask you about the old company, too, and the updates and that. I am going to ask you some questions about the new company





and just answer them to the best of your ability, and if there's further objections, we can let the judge rule on them.
Okay. So you can let me know, to your knowledge, who the owners of F. G. L. Woodworking and Audio Video are?
A. On the corporation?
Q. Of the corporation, yes.
A. It would be myself, my wife, and Chris and Lisa Hetley.
Q. Okay. What's your wife's name?
A. Cheryl Lancia.
Q. And who are Chris and Lisa Hetley?
A. They're owners of the new company.
Q. Are they relatives of yours?
A. No.
Q. Have you ever been business partners of yours in the past?
A. No.
Q. Can you tell me what percentage of the company that you personally own?
A. Seventy-five.
Q. Seventy-five percent?
A. Uh-huh.
Q. Was there any contributions of capital to form

this company?
A. What do you mean?
Q. Did anyone — Did you or your wife, or Chris or Lisa Hetley put any money together in order to form this company?
A. Just a small amount.
Q. Okay.
A. For the corporation.
Q. Can you tell me how much was put together to form the corporation?
A. Eight hundred was me, 200 Lisa.
Q. Anybody else make any contributions?
A. No.
Q. Okay. Are you an officer of F. G. L. Woodworking and Audio Video?
A. Officer?
Q. Such as the president or secretary.
A. I would be a president.
Q. Okay. All right. Can you describe for me the types of work that F. G. L. Woodworking and Audio Video performs?
A. Do a little residential entertainment centers, audio components provided to entertainment centers, things of those natures. We do some kitchen cabinetry, fixing chairs. Just a lot of small stuff.





Q. Okay. So do you make custom entertainment centers like something like we have in the office here? [Indicating].
A. Make entertainment centers, yeah.
Q. And do you do any of the electronic stuff, or you just do the woodworking?
A. No. The component stuff, we provide that. Chris Hetley does that.
Q. He does the electronic stuff?
A. He does the components, yes.
Q. Okay. Now can you explain for me the type of work that the old company, F. G. Lancia Custom Woodworking performed?
A. We did a lot more larger, small projects, you know, commercial projects.
Q. But —
A. Stuff like that.
Q. What sorts of larger scale commercial projects?
A. Like KV Pharmaceuticals.
Q. But what types of work for that?
A. It could be desks, could be jewelry stores, just whatever we could get.
Q. The old company, did they make custom furniture, though, and custom —
A. Yes, we did.





Q. Would you do, aside from like the furniture and things like that, would you do anything else?
A. No. Just basically that's it.
Q. Okay. How long has the new company, F. G. L. Woodworking and Audio Video been around?
A. Since, let's see here, I forget when it was. I don't remember when we incorporated. Let's say the end of, say, is it June? Say June, but I'm not sure exactly.
Q. June of 2008?
A. Yeah.
Q. Can you tell me approximately when the old company stopped doing business, or —
A. The union pulled the men out at the end of May.
Q. Okay. So that's the last time the old company had done any business; right?
A. Yes.
Q. What's the address, that office address, or whatever for the new company?
A. It's the 813 North Skinker. The new office?
Q. Yeah. The new company.
A. Oh, the new company address?
Q. Yes.
A. 106 Clear Meadows is the registered address.
Q. Is that an office, or somebody's home?
A. That's a home.





Q. Whose home is that?
A. Lisa.
Q. Okay. And then you're saying earlier what the address of the old company was. Can you state that?
A. 813 North Skinker.
Q. 813 North Skinker?
A. That's a working facility.
Q. Okay. All right. How many employees does F. G. Lancia Woodworking and Audio Video have?
A. We have one, two, one, two, three, four — Seven currently, including the office and myself.
Q. Can you list those employees, please?
A. That would be —
Q. And also, tell me what they do when you list each name.
A. Be Glen is machine hand.
MR. O'SHEA: Again, I'm going to raise that objection, I want this objection to run to any questions concerning this company, because I don't think it's relevant what the people are, what their names are, whatever. I don't know that you've got the authority to be letting that out, but go ahead and try to answer the question subject to my objection.
Q. (By Mr. Evans) Okay. So Glen, what was Glen's last name?

A. Schaffer.
Q. And what does he do?
A. And why is this needed?
Q. Well, I mean, relevancy, if there's any employee overlap between the two companies. And it's a deposition, it's got a very broad range of questions I can ask.
MR. O'SHEA: Well, I'm going to object to the broad range of questions. If you want to ask him some specific questions about specific employees, you can, but I mean, when you start — pretty soon then we'll have his wife and his kids —
A. Yes.
MR. O'SHEA: — and the paperboy, and everybody else involved in this case, and I don't think that's relevant.
Q. (By Mr. Evans) I will tell you what I'm going to do here. I'm going to ask, you know, there's seven employees, it's not a whole lot of people, and I'm going to ask you who they are, what they do, and if they've ever been involved in the old company at all.
So Glen Schaeffer, and what does he do for the new company?
A. He's a machine hand.
Q. Did he work for F. G. Lancia Custom Woodworking, LLC?





A. At one time.
Q. When did he work for the old company?
A. I don't remember. I don't remember the dates.
Q. Okay. Aside from Glen Schaffer, who are the other employees?
A. We have Mike Ahagen, never worked for me, a bench hand.
Q. Can you spell his last name, please?
A. No. I couldn't even tell you. Just take a guess.
Q. Ahagen?
A. I know it's H-a-g, and then beyond that is —
Q. Okay. And what does he do for the new company?
A. He's a benchhand/foreman.
Q. And he had not performed any work for the old company?
A. No.
Q. Okay.
A. And there's Mike Ahagen, Junior.
Q. Okay. And what does he do?
A. He's a benchhand, learning.
Q. And did he work for the old company?
A. No. There is a finisher, Ted.
Q. Ted, what's his last name?
A. I don't remember. I always say Ted.





Q. And did he —
A. He'd never worked for the old company.
Q. All right.
A. Then there's Chris Hetley.
Q. And what is his position?
A. He does audio video components.
Q. Okay. Did he ever work for the old company?
A. He did some component work.
Q. Okay. So we have one, two, three, four, five. Who are the other two employees?
A. There's Melinda.
Q. Okay. What's her last name?
A. Melinda Bushard.
Q. Do you know how to spell it?
A. B-u-s-h-a-r-d, I want to say.
Q. Okay.
A. And she's a secretary.
Q. Did she work for the old company?
A. Yes.
Q. Was she a secretary for the old company?
A. Yes.
Q. Okay. Who's the last employee?
A. That would be it. That would be it. Just me and Lisa are owners.
Q. So we have Glen Shaffer, Mike Hagen, Mike Hagen,





Junior, Ted, which we don't know his last name, Chris Hetley and Melinda Bushard?
A. Uh-huh.
Q. All right. Who does the hiring and firing at the new company?
A. Myself.
Q. Okay. Who directs employees in the field at the new company?
MR. O'SHEA: I want to object to this now. This is getting way beyond the scope of an examination of a judgment debtor, and I just don't think that's relevant, and I'm going to say on those things like that, if you want to answer it, go ahead, but I just can't — think it's a good idea.
Q. (By Mr. Evans) So you're not going to answer the question?
A. No. You're asking me who?
Q. Asking who directs the employees when you're working in the field?
A. Who does the install?
Q. Well, who tells, who bosses people around, essentially, when they're performing the work that they're hired to do?
A. A foreman.
Q. Who's the foreman again?

A. Mike Ahagen.
Q. Now do you personally do any of the work in the field, or you just run the company?
A. No, I help out a little bit on the bench every now and then.
Q. So you also do some of the actual —
A. Yeah. We're slow right now.
Q. Okay. Does the new company have any accounts receivable?
A. Very little.
Q. Can you tell me what those are?
A. No, I don't know offhand what they are.
Q. All right. Do you know approximately how many jobs the new company's performed since it started in the summer of last year?
A. No.
Q. Would it be under 10?
A. Somewhere around there.
Q. Say approximately 10?
A. Approximately. I'm not quite sure, though.
Q. Can you tell me who some of the customers are?
A. No.
MR. O'SHEA: Now here we're getting into — Again, this is —
A. No, I'm not.





MR. O'SHEA: This is something you don't have authority to be giving out.
A. Huh-uh.
MR. O'SHEA: And if you know the answer, try to answer it, but I'm objecting to this.
Q. (By Mr. Evans) Okay. So you don't remember who any of the customers are for the new company?
A. No. They're just residential people.
Q. So individuals?
A. Individuals.
Q. Do you remember if any of the individuals you'd worked for for the new company, you'd also worked for for the old company?
A. No. They're new, new clients. There may be one or two, or something like that, but I don't know the amounts.
Q. Okay.
A. Nobody's got money right now to spend.
Q. Well, that's certainly, that's certainly true. This new company have a bank account?
A. Yes.
Q. Where is that at?
A. Eagle.
Q. Eagle Bank. Does the new company have an accountant?





A. Yes.
Q. Okay. Who's that?
A. Casper St. John is the name of the firm.
Q. Was he the accountant for the old company?
A. Yes.
Q. Okay. Is Mr. O'Shea the company, the — I assume he's the attorney for the new company?
A. He's my attorney.
Q. Is he also the attorney for the old company, or was the attorney for the old company?
A. I don't think.
MR. O'SHEA: It's hard to say.
A. I don't know if we ever did anything.
MR. O'SHEA: I think I tried to help out on these.
A. Maybe, maybe some small stuff, or something. I don't know.
MR. O'SHEA: I mean, just —
A. I don't remember.
MR. O'SHEA: It's been about maybe two months, and, you know —
A. Other than this, I never get in trouble, so —
Q. (By Mr. Evans) Fair enough. Okay. Who are the suppliers of the new company?
MR. O'SHEA: I want to object to that, that





calls for confidential matters, that's calling for customer list, and whatever. If you know, and if you don't know, I just, I don't think you have to answer that question.
A. No.
MR. O'SHEA: I really don't.
Q. (By Mr. Evans) You don't know who the suppliers are?
A. Just material suppliers, I mean.
Q. Who are the material suppliers?
MR. O'SHEA: Again, I'm going to object to that on the same grounds, it's confidential for that company. I don't think he has got the authority to answer it.
MR. EVANS: I mean, I don't think, you know, who you buy the wood to make cabinets, and, you know, the electronic goods to make entertainment centers, that's necessarily a confidential, top secret information.
MR. O'SHEA: Well, I think it's the same as the customer list, you're asking about who the customers are, and I think that's something that he doesn't have authority to disclose, and who the suppliers might be, we don't know, but in the meantime we don't want people coming out there and screwing up his credit, which is bad enough, by saying, oh, we're trying to find this stuff out, and start dunning the property list people, or the

material people.

Now if you know the answer to the question, you know, if you know it, go ahead and answer it, but subject to that objection.

Q. (By Mr. Evans) So do you know who the suppliers of the new company are?

A. Home Depot, Lowes, okay. I mean, that's — you know, I mean, that's material people.

Q. All right. Does the new company have an insurance agent?

A. Yes.

Q. Who is that?

A. Paul Young.

MR. O'SHEA: Young.

A. Y-o-u-n-g, or something like that.

MR. O'SHEA: Okay.

Q. (By Mr. Evans) Was he the insurance agent of the old company?

A. At one time and a long time ago and Mark Boresik was the one who took over A. T. Insurance. A long time ago Paul was. I just recently switched to him.

Q. Okay. And has the new company, has it signed any collective bargaining agreements with any unions?

A. No.

Q. Okay. All right.





A. I'm trying to pay you guys off.

Q. All right. I'm going to ask you just a few questions that are concerning the old company, just what assets are left.

Does the old company have any accounts receivable that are still out there?

A. No.

Q. Any amounts out there that are owed to the old company?

A. No.

Q. Okay.

A. You talking, I got bills to pay for the old company.

Q. But people that owe the old company money?

A. No.

Q. Does the old company have any corporate stock or bonds?

A. No.

Q. Bank accounts?

A. No.

Q. CDs?

A. Well, there is one bank account, that Eagle Bank that you guys hit all the time.

Q. Is that still —

A. That's just open. It's out there.





Q. Is there any money in it?

A. No.

Q. Okay. Does it own any CDs?

A. No.

Q. Okay. Has the old company made any loans that are still outstanding?

A. No.

Q. Does the old company own any real estate?

A. No.

Q. Does the old company have any tools left?

A. Bank of America owns all that.

Q. Did they repossess it?

A. Not yet.

Q. Are they in possession of it?

A. No. They have a UCC filing on everything.

Q. Okay. Now are any of the tools from the old company being used in the new company?

A. Yes.

Q. Which ones are being used?

A. I don't have the list. I don't know it all. I mean, couple table saws, naturally a table saw, a panel saw, a jointer and some hand tools, that's all, like routers.

Q. Okay. And then you said Bank of America has a UCC filing on all that stuff?





A. Yes.

Q. And they have not made any efforts to repossess it?

A. Not at the moment.

MR. O'SHEA: Just off the record.

[discussion off the record].

Q. (By Mr. Evans) We can go back on the record. And let me ask you this: How much is owed by the old company to Bank of America?

A. The hundred and fifty.

Q. Okay. Does the old company have any vehicles?

A. No.

Q. Okay.

A. Well, actually, one red one that don't run, just sits in the yard.

Q. Is the UCC against that, too?

A. Yes. I'm sure.

Q. All right. Any equipment other than those tools we talked about?

A. No.

Q. Okay. All right. At the last deposition we talked about the monies that were owed by the old company to the suppliers and various other entities.

Are those amounts, to your knowledge, are they still out there?

A. I've been hitting them little by little and trying to pay everybody down.

A. What I'm doing is, I'm trying to work and pay down everybody, so all's I have is the big ones left to try to tackle, okay. That's what I'm trying to do.

Q. All right.

A. That's why I've not filed bankruptcy on the old company or personally, because I'm trying to work through all this. I'm trying to pay everybody off and just work at it little by little and do the best I can to try to make this happen.

MR. EVANS: Okay. That's all the questions that I have. So with that, we can, you know, talk to your attorney about whether you want to read through this before you sign it, or want to waive.

MR. O'SHEA: We'll waive signature on it. We can go ahead and do that, is waive signature.

MR. EVANS: Okay.

[SIGNATURE OF THE WITNESS WAIVED BY AGREEMENT OF COUNSEL AND CONSENT OF THE WITNESS.]





CERTIFICATE

I, JANE M. RICH, a Certified Court Reporter, within and for the State of Missouri, license #411, do hereby certify that pursuant to notice there came before me at the law offices of Hammond, Shinners, Turcotte, Larrew & Young, 7730 Carondelet, Clayton, Missouri,

FRANK LANCIA,

who was first duly sworn to testify to the truth and nothing but the truth of all knowledge touching and concerning the matters in controversy in this cause; that the witness was thereupon examined, and said examination was reduced to writing by me, and signature of the witness waived by agreement of counsel and consent of the witness; and that this deposition is a true and accurate record of the testimony given by the witness.

I further certify that I am not of counsel, nor attorney for either of the parties to said suit, nor related, nor interested in any of the parties or their attorneys.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of January, 2009.

Jane M. Rich, CCR #411

**1**

**10** 17:17,19
**106** 11:23
**12th** 26:13.5
**134,998.86** 3:18

**2**

**200** 9:11
**2007** 3:17
**2008** 11:9
**2009** 1:14; 26:13.5

**3**

**303** 4:11
**314-961-6306** 1:23

**4**

**411** 2:13.5; 3:4; 26:2.5, 14.5
**440014** 1:22
**4:06CV-1678CAS** 1:5; 2:5
**4:06CV1673-CAS** 3:16

**5**

**5th** 3:17

**6**

**63105** 2:19.5
**63125** 2:21.5
**63144** 1:22.5

**7**

**7730** 2:12.5, 19.5; 26:4
**779** 2:21

**8**

**8** 1:14
**813** 11:19; 12:5,6

**A**

**ability** 8:1
**access** 7:20
**account** 18:20; 22:22
**accountant** 18:25; 19:4
**accounts** 17:8; 22:5,19
**accurate** 26:9
**actual** 17:6
**actually** 7:6; 24:14
**additional** 4:19
**address** 4:10; 11:17,21,23; 12:4
**age** 3:9
**agent** 21:10,17
**ago** 21:19,21
**AGREED** 3:1
**agreement** 3:6; 25:19; 26:8.5
**agreements** 21:23
**Ahagen** 14:6, 11,19; 17:1
**ahead** 4:6; 12:22; 16:13; 21:3; 25:17
**al** 1:3.5; 2:3.5; 3:14
**all's** 25:4
**already** 3:23
**America** 23:11, 24; 24:9
**amount** 3:18; 9:6
**amounts** 18:16; 22:8; 24:24
**answer** 4:6; 5:1; 6:18; 7:14; 8:1; 12:22; 16:13, 15; 18:4,5; 20:3,13; 21:2,3
**anticipate** 4:19
**Anybody** 9:12
**approximately** 11:11; 17:13, 19,20
**around** 11:5; 16:21; 17:18
**aside** 7:2; 11:1; 14:4
**assets** 22:4
**ASSOCIATES** 1:21.5
**assume** 19:7
**attorneys** 26:12
**audio** 5:12; 8:6; 9:15,20, 23; 11:5; 12:9; 15:6
**authority** 12:21; 18:2; 20:13,21

**B**

**B-u-s-h-a-r-d** 15:15
**back** 24:7
**backup** 5:5
**bad** 20:23
**Ballwin** 4:11
**bank** 18:20,24; 22:19,22; 23:11,24; 24:9
**bankruptcy** 25:7
**bargaining** 21:23
**based** 4:4
**basically** 11:3
**behalf** 1:13.5; 2:10.5; 3:10
**bench** 14:7; 17:4
**benchhand** 14:21
**benchhand/for-eman** 14:14
**best** 7:14; 8:1; 25:10
**between** 2:10.5; 3:1; 13:5
**beyond** 14:12; 16:10
**bids** 4:22; 5:6
**big** 25:4
**bill** 7:7
**bills** 22:12
**bit** 5:20; 17:4
**bonds** 22:17
**Boresik** 21:19
**bosses** 16:21
**BOX** 1:22
**break** 7:2
**broad** 13:6,8
**Bushard** 15:13; 16:2
**business** 4:13, 17,19; 8:17; 11:12,15
**buy** 20:15

**C**

**CA** 1:24.5
**cabinetry** 9:24
**cabinets** 20:15
**called** 7:7
**calling** 20:1
**calls** 20:1
**came** 26:3
**capital** 8:25
**caption** 7:8
**Carondelet** 2:12.5,19.5; 26:4
**CARPENTERS'** 1:3; 2:3; 3:13
**case** 3:15; 13:14
**Casper** 19:3
**cause** 1:5; 2:5; 26:7
**CCR** 1:24.5; 26:14.5
**CDs** 22:21; 23:3
**centers** 9:22, 23; 10:2,4; 20:16
**certainly** 18:19
**CERTIFICATE** 26:1
**Certified** 2:13; 3:4; 26:2
**certify** 26:3, 10.5
**chairs** 9:25
**changed** 7:22
**Cheryl** 8:12
**Chris** 8:9,13; 9:3; 10:8; 15:4; 16:1
**circumstances** 6:13; 7:4
**Clayton** 2:12.5,19.5; 26:4

Clear 11:23
clients 18:14
collective 21:23
coming 20:23
commercial 10:15,18
companies 13:5
company 4:13, 20; 5:9,13, 16,19,24,25; 6:4,6,7,8,15, 21,23; 7:18, 24,25; 8:14, 20; 9:1,5; 10:12,23; 11:4,12,14, 18,20,21; 12:4,19; 13:20,22; 14:2,13,16, 22; 15:2,7, 18,20; 16:5, 8; 17:3,8; 18:7,12,13, 20,24; 19:4, 6,7,9,10,24; 20:12; 21:6, 9,18,22; 22:3,5,9,13, 14,16; 23:5, 8,10,17; 24:9,11,22; 25:8
company's 17:14
component 10:7; 15:8
components 9:23; 10:10; 15:6
concerned 6:16
concerning 6:4; 12:19; 22:3; 26:7
conditions 7:3
confidential 20:1,12,17
consent 3:6; 25:20; 26:8.5
contact 4:25
contributions 8:25; 9:12
controversy 26:7
corporate 7:2; 22:16
corporation
8:7,8; 9:8,10
couldn't 14:9
COUNCIL 1:3; 2:3; 3:13
couple 23:21
covered 4:2
covers 4:1
credit 20:23
creditor's 7:7
CSR 1:24.5
currently 12:11
custom 1:6.5; 2:6.5; 3:14; 4:12,16; 5:6; 10:1,12,23, 24; 13:24
customer 20:2, 19
customers 17:21; 18:7; 20:19

D

dates 14:3
day 2:11.5; 26:13.5
debtor 3:23; 16:11
debts 6:8
defendant 2:20.5; 7:9
Defendants 1:8.5; 2:8.5; 3:2
deposition 1:13; 2:10; 3:3; 13:5; 24:21; 26:9
Depot 21:7
describe 9:19
desks 10:21
DIRECT 3:11
directs 16:7, 18
disclose 20:21
discovery 6:24
DISTRICT 1:1, 1.5,3; 2:1, 1.5,3; 3:13
DIVISION 1:2; 2:2
doing 4:1,19; 11:12; 25:3
done 4:15; 7:11,13; 11:15
down 25:2,4
duly 3:9; 26:6
dunning 20:25
duplicitas 4:5

E

each 12:15
Eagle 18:23, 24; 22:22
earlier 12:3
EASTERN 1:1.5, 2; 2:1.5,2
efforts 24:2
eight 2:11; 9:11
either 26:11
electronic 10:5,9; 20:16
employee 5:17, 18; 13:4; 15:22
employees 12:8,12; 13:9,18; 14:5; 15:10; 16:7,18
employer 6:9
end 4:18; 11:7,13
enough 19:23; 20:24
entertainment 9:22,23; 10:1,4; 20:16
entities 24:23
entitled 3:25
entity 7:8
entity's 4:14
equipment 24:18
equity 7:7
essentially 16:22
estate 23:8
et 1:3.5; 2:3.5; 3:14
Evans 2:18.5; 3:12; 4:7; 6:5,19; 7:6, 15,23; 12:24; 13:16; 16:15; 18:6; 19:23; 20:7,14; 21:5,17; 24:7; 25:12, 18
even 14:9
evening 2:11.5
everybody 13:13; 25:2, 4,9
everything 23:15
EVNAS 7:12
exactly 11:8
examination 3:11,23; 5:23; 16:10; 26:7.5
examined 2:10.5; 26:7.5
Excuse 5:1
explain 10:11

F

F-r-a-n-k 4:9
F.G. 4:16
facility 12:7
Fair 19:23
familiar 5:12
far 6:16
Ferry 2:21
few 22:2
field 16:7,19; 17:3
fifty 24:10
file 6:21,23, 25; 7:6
filed 7:7; 25:7
filing 7:11; 23:15,25
find 20:24
finisher 14:23
firing 16:4
firm 2:19; 19:3
first 4:2; 7:8,9; 26:6
five 15:9
fixing 9:24
follows 3:10
foreman 16:24, 25
forenoon 2:11
forget 11:6
form 8:25; 9:4,10
forth 4:2
four 12:10; 15:9
FRANK 1:7,13; 2:7,10; 3:8,

15; 4:9;
5:24; 26:5
**furniture**
10:23; 11:1
**further** 8:2;
26:10.5

G

**getting** 16:10;
17:23
**give** 6:14
**given** 26:9.5
**giving** 18:2
**Glen** 12:16,24;
13:21; 14:4;
15:25
**Glen's** 12:24
**goods** 20:16
**got** 6:25;
7:17,18,19;
12:21; 13:6;
18:18; 20:13;
22:12
**GREATER** 1:3.5;
2:3.5; 3:14
**Gregory** 2:20.5
**grounds** 20:12
**guess** 14:10
**guys** 22:1,23

H

**H-a-g** 14:12
**Hagen** 15:25
**Hammond** 2:12,
19; 26:3.5
**hand** 12:16;
13:23; 14:7;
23:22; 26:13
**happen** 25:11
**hard** 5:3;
19:12
**he'll** 7:16
**head** 5:3
**head]** 4:24
**help** 17:4;
19:14
**hereby** 3:1;
26:3
**hereunto** 26:13
**Hetley** 8:10,
13; 9:4;
10:8; 15:4;
16:2
**High** 4:11
**hired** 16:23
**hiring** 16:4
**hit** 22:23
**hitting** 25:1
**hold** 6:21
**holds** 7:8
**home** 11:24,25;
12:1; 21:7
**hours** 2:10.5
**hundred** 9:11;
24:10

I

**idea** 16:14
**IL** 1:24.5
**including**
12:11
**incorporated**
11:7
**individuals**
18:9,10,11
**information**
4:2; 6:14;
20:17
**install** 16:20
**insurance**
21:10,17,20
**interest** 5:15,
19
**interested**
26:11.5
**involved**
13:14,20
**irrelevant** 6:1
**issues** 6:11

J

**Jane** 1:24.5;
2:13; 3:3;
26:2,14.5
**January** 1:14;
26:13.5
**jewelry** 10:21
**jobs** 17:14
**John** 19:3
**jointer** 23:22
**judge** 8:2
**judgment** 3:17,
23; 5:25;
6:3; 7:1;
16:11
**June** 3:17;
11:8,9
**Junior** 14:19;
16:1

K

**keep** 3:25
**kids** 13:11
**kitchen** 9:24
**knowing** 6:22
**knowledge** 8:5;
24:24; 26:6.5
**KV** 10:19

L

**L-a-n-c-i-a**
4:9
**LANCIA** 1:6.5,
7.5,13;
2:6.5,7.5,10;
3:8,14,15,24;
4:9,12,16;
5:6,23,24;
7:18; 8:12;
10:12; 12:9;
13:24; 26:5
**larger** 10:14,
18
**Larrew** 2:12.5,
19; 26:4
**last** 4:16;
11:14; 12:25;
14:8,24;
15:12,22;
16:1; 17:15;
24:21
**law** 2:12,19,
21; 3:25;
26:3.5
**lawful** 3:9
**lawsuit** 5:25;
7:1
**learning** 14:21
**left** 22:4;
23:10; 25:4
**Lemay** 2:21
**letting** 12:22
**liable** 6:7,21;
7:9
**license**
2:13.5; 3:4;
26:2.5
**Lisa** 8:9,13;
9:4,11; 12:2;
15:24
**list** 12:12,14;
20:2,19,25;
23:20
**little** 5:20;
9:22; 17:4,
10; 25:1,10
**LLC** 1:7; 2:7;
3:15; 13:25
**loans** 23:5
**long** 11:4;
21:19,20
**lot** 9:25;
10:14; 13:18
**LOUIS** 1:3.5,
22.5; 2:3.5,
21; 3:14
**Lowes** 21:7

M

**machine** 12:16;
13:23
**made** 23:5;
24:2
**many** 12:8;
17:13
**Mark** 21:19
**material** 20:9,
10; 21:1,8
**matter** 6:7,10,
24
**matters** 20:1;
26:7
**Meadows** 4:11;
11:23
**mean** 6:5,20;
9:2; 13:4,10;
19:18; 20:9,
14; 21:7,8;
23:21
**meantime** 20:22
**Melinda** 15:11,
13; 16:2
**men** 11:13
**might** 6:2,7,
15,22; 20:21
**Mike** 2:18.5;
14:6,19;
15:25; 17:1
**MISSOURI**
1:1.5,22.5;
2:1.5,13,14,
19.5,21.5;
4:11; 26:2.5,
4
**MO** 1:24.5
**moment** 4:21;
24:4
**money** 6:2;
9:4; 18:18;
22:14; 23:1
**monies** 24:22
**months** 19:20

motion 6:21
much 9:9; 24:8
myself 8:9; 12:11; 16:6

N

name 3:19; 4:8; 8:11; 12:15,25; 14:8,24; 15:12; 16:1; 19:3
names 12:20
natural 5:4
naturally 23:21
natures 9:24
necessarily 20:17
needed 13:3
never 14:6; 15:2; 19:22
new 6:7,25; 7:25; 8:14; 11:4,18,19, 20,21; 13:22; 14:13; 16:5, 8; 17:8,14; 18:7,12,14, 20,24; 19:7, 24; 21:6,9, 22; 23:17
No. 1:5; 2:5
Nobody's 18:18
nor 7:20; 26:10.5,11, 11.5
North 11:19; 12:5,6
nothing 5:24; 26:6.5
nothing's 4:14; 7:22
notice 26:3
number 3:4,15

O

o'clock 2:11
O'Shea 2:21; 3:21; 5:22; 6:11,25; 7:10,13,16; 12:17; 13:7, 13; 16:9; 17:23; 18:1, 4; 19:6,12, 14,18,20,25; 20:6,11,18; 21:14,16; 24:5; 25:16
o-0-o 3:7
oath 3:10
object 4:4; 5:22; 6:3; 13:7; 16:9; 19:25; 20:11
objecting 18:5
objection 3:22; 4:6; 12:18,23; 21:4
objections 8:2
offhand 17:12
office 10:2; 11:17,19,24; 12:11
officer 9:14, 16
offices 2:12; 26:3.5
okay 4:6,12; 5:5,21; 7:15; 8:4,11; 9:7, 14,19; 10:1, 11; 11:4,14; 12:3,8,24; 14:4,13,18, 20; 15:7,9, 12,16,22; 16:7; 17:8; 18:6,17; 19:2,6,23; 21:7,16,22, 25; 22:11; 23:3,5,16,24; 24:11,13,21; 25:5,12,18
old 6:8; 7:21, 24; 10:12,23; 11:11,14; 12:4; 13:20; 14:2,15,22; 15:2,7,18,20; 18:13; 19:4, 9,10; 21:18; 22:3,5,8,12, 14,16; 23:5, 8,10,16; 24:8,11,22; 25:7
one 4:3; 12:10; 14:1; 15:9; 18:14; 21:19,20; 22:22; 24:14
ones 23:19; 25:4
open 22:25
operation 6:16
order 9:4
other 4:25; 5:8,21; 14:5; 15:10; 19:22; 24:18,23
out 4:14,15; 11:13; 12:22; 17:4; 18:2; 19:14; 20:23, 25; 22:6,8, 25; 24:25
outstanding 23:6
over 7:19; 21:20
overlap 13:5
owe 22:14
owed 6:2,15; 22:8; 24:8,22
own 8:21; 23:3,8
owners 5:21; 8:5,14; 15:24
ownership 5:15,18
owns 23:11

P

P.O. 1:22
panel 23:21
paperboy 13:13
paperwork 7:21
part 3:24; 5:25
parties 26:11, 11.5
partners 8:17
past 8:18
Paul 21:13,21
pay 6:2; 7:18; 22:1,12; 25:2,3,9
people 4:25; 12:20; 13:18; 16:21; 18:8; 20:22,25; 21:1,8; 22:14
percent 8:23
percentage 8:20
perfectly 5:4
performed 10:13; 14:15; 17:14
performing 16:22
performs 9:21
period 7:10
personally 8:21; 17:2; 25:8
Pharmaceutica-ls 10:19
placed 5:6
Plaintiff 2:18.5
Plaintiffs 1:4.5,13.5; 2:4.5,10.5; 3:2,10
pleadings 6:12,20
please 3:19; 4:8,10; 12:12; 14:8
position 15:5
possession 23:14
premature 7:5
present 2:12
president 9:17,18
pretty 13:10
proceeding 4:5
produced 2:10; 3:9
projects 10:14,15,18
property 20:25
provide 10:7
provided 9:23
pulled 11:13
pursuant 26:3
put 9:4,9

Q

question 4:6; 5:11; 12:23; 16:16; 20:4; 21:2
questions 3:12; 5:23; 6:1,4,6; 7:25; 12:18; 13:6,8,9; 22:3; 25:12
quite 17:20

R

raise 12:17
raised 6:11, 12,20
range 13:6,8
read 25:14
real 23:8
really 20:6
reasons 6:10
receivable 17:9; 22:6
recently 21:21
record 3:20; 4:8; 5:3; 6:5; 24:5,7; 26:9
records 7:17
record] 24:6
red 24:14
reduced 26:8
regard 6:19
registered 11:23
related 6:6; 26:11.5
relatives 8:15
relevancy 13:4
relevant 6:6, 10,13,17; 12:20; 13:15; 16:11
remember 11:7; 14:3,25; 18:6,11; 19:19
Reported 1:24.5
reporter 2:11.5,13.5; 3:4; 26:2
REPORTING 1:21.5
repossess 23:12; 24:2
represented 2:18.5,20.5
residential 9:22; 18:8
Rich 1:24.5; 2:13; 3:3; 26:2,14.5
Road 2:21
routers 23:23
RPR 1:24.5
rule 8:2
run 12:18; 17:3; 24:14

S

same 4:1; 7:21; 20:12, 18
saw 23:21,22
saws 23:21
saying 12:3; 20:24
scale 10:18
Schaeffer 13:21
Schaffer 13:1; 14:4
scope 16:10
screwing 20:23
second 6:21; 7:8
secret 20:17
secretary 9:17; 15:17, 20
see 11:6
separate 6:22
set 7:2; 26:13
seven 12:10; 13:17
Seventy-five 8:22,23
Shaffer 15:25
shaking 4:24; 5:3
Shinners 2:12, 19; 26:3.5
shorthand 2:11.5; 3:3
sign 25:15
signature 3:5; 25:16,17; 26:8
signed 21:22
since 11:6; 17:14
single 6:9
sits 24:15
situation 3:24
six 2:11
Skinker 11:19; 12:5,6
slow 17:7
small 9:6,25; 10:14; 19:16
solicit 5:8
somebody's 11:24
something 10:2; 18:1, 15; 19:16; 20:20; 21:15
Somewhere 17:18
soon 13:10
sort 7:2
sorts 10:18
specific 13:9
spell 3:19; 4:7; 14:8; 15:14
spend 18:18
ST. 1:3.5, 22.5; 2:3.5, 21; 3:14; 19:3
start 13:10; 20:25
started 3:21; 17:14
state 2:13.5; 3:19; 4:7,10; 12:4; 26:2.5
STATES 1:1; 2:1
still 4:13,22, 25; 22:6,24; 23:6; 24:25
stock 22:16
stopped 11:12
stores 10:21
stub 7:18
stuff 7:22; 9:25; 10:5,7, 9,17; 19:16; 20:24; 23:25
subject 4:5; 12:23; 21:3
successorship 6:9
suit 7:2,8,9, 11; 26:11
summer 17:15
suppliers 19:24; 20:7, 9,10,21; 21:5; 24:23
switched 21:21
sworn 2:10; 3:9; 26:6

T

table 23:21
tackle 25:5
talked 24:19, 22
Ted 14:23,24, 25; 16:1
tells 16:21
testified 3:10
testify 26:6
testimony 26:9.5
theories 6:8
there's 8:2; 13:4,17; 14:19; 15:4, 11
thereupon 26:7.5
they've 13:19
thing 3:22
things 4:1; 9:23; 11:2; 16:12
though 5:4; 10:24; 17:20
three 6:9; 12:10; 15:9
together 9:4,9
took 21:20
tools 23:10, 16,22; 24:18
top 20:17
totally 6:22
touching 26:6.5
transcribed 3:5
tried 5:8; 19:14
trouble 19:22
true 18:19; 26:9
truth 26:6,6.5
try 7:1,14; 12:22; 18:4; 25:5,10
trying 4:25; 20:24; 22:1; 25:2,3,5,8,9
Turcotte 2:12.5,19; 26:3.5
two 12:10; 13:5; 15:9, 10; 18:15; 19:20
type 10:11
types 9:20; 10:20
typewriting 3:5

**U**

**UCC** 23:15,25; 24:16
**under** 3:25; 6:8,13; 7:3, 7; 17:17
**union** 11:13
**unions** 21:23
**UNITED** 1:1; 2:1
**unless** 6:2
**until** 4:21
**up** 20:23
**update** 7:17
**updates** 7:24

**V**

**variety** 6:8
**various** 24:23
**vehicles** 24:11
**veil** 7:3
**versus** 3:14
**video** 5:12; 8:6; 9:15,20; 11:5; 12:9; 15:6
**vs** 1:5.5; 2:5.5

**W**

**waive** 25:15, 16,17
**waived** 3:6; 25:19; 26:8.5
**way** 16:10
**ways** 5:8
**whatever** 6:16; 7:3; 10:22; 11:18; 12:21; 20:2
**WHEREOF** 26:13
**whether** 25:14
**Who's** 15:22; 16:25; 19:2
**whole** 6:25; 13:18
**wife** 8:9; 9:3; 13:11
**wife's** 8:11
**will** 6:14; 13:16
**within** 2:13.5; 26:2.5
**without** 6:21; 7:11
**witness** 3:5,6; 25:19; 26:7.5,8,8.5, 9.5,13
**WITNESS.]** 25:20
**wood** 20:15
**woodworking** 1:7; 2:7; 3:15; 4:12, 17; 5:6,12; 8:5; 9:15,20; 10:6,12; 11:5; 12:9; 13:24
**work** 5:1,8; 9:20; 10:12, 20; 13:24; 14:2,15,22; 15:7,8,18; 16:22; 17:2; 25:3,8,9
**worked** 14:6; 15:2; 18:12
**working** 12:7; 16:19
**writing** 26:8

**Y**

**Y-o-u-n-g** 21:15
**yard** 24:15
**year** 17:15
**Young** 2:12.5, 19.5; 21:13, 14; 26:4

**[**

**[discussion** 24:6
**[Indicating]** 10:3
**[SIGNATURE** 25:19

**_**

**__________** 26:14