UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARPENTERS' DISTRICT COUNCIL OF GREATER ST. LOUIS AND VICINITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> F.G. LANCIA CUSTOM WOODWORKING, LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 4:06-CV-1673 CAS |

## MEMORANDUM AND ORDER

This closed matter under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., is before the Court on plaintiffs' Motion For a Creditor's Bill in Equity and to Pierce the Corporate Veil.  Plaintiff Carpenters' District Council of Greater St. Louis and Vicinity is an unincorporated association comprised of and representing persons engaged in carpentry, joining and related activities and is a labor organization within the meaning of the National Labor Relations Act, and an employee organization within the meaning of ERISA.  The other plaintiffs are various related trust funds which are employee benefit plans under ERISA, and the trustees and fiduciaries of those plans.  Plaintiffs obtained a default judgment in this action against defendant F. G. Lancia Custom Woodworking, LLC ("Lancia LLC") for unpaid contributions to the plans, and against Lancia LLC and Frank Lancia for money due on a promissory note.

Plaintiffs now seek to satisfy the remainder of their uncollected judgment against the defendants from assets of their alleged alter ego, F.G.L. Custom Woodworking and Audio/Video, Inc. ("F.G.L.").  Defendant Frank Lancia opposes the motion and it is fully briefed.  For the following

reasons, plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil will be granted.

**Discussion**

    **A. Procedural History**

On November 17, 2006, plaintiffs filed suit against defendant Lancia LLC in order to collect delinquent contributions, liquidated damages, interest, attorneys' fees, and costs owed pursuant to collective bargaining agreements and under the terms of ERISA, 29 U.S.C. § 1132. On January 18, 2007, plaintiffs filed an amended complaint which added Frank Lancia as a defendant and asserted a claim against Lancia LLC and Mr. Lancia for sums due under promissory note. On June 5, 2007, this Court entered a default judgment against defendant Lancia LLC for unpaid contributions in the amount of $46,842.17, and a default judgment against Lancia LLC and Frank Lancia, jointly and severally, on the promissory note in the amount of $87,105.14, together with attorney's fees and costs of $1,051.55 (Doc. 16). Plaintiffs have bee unable to collect the entire judgment amounts from either defendant.

Plaintiffs have moved for a Creditor's Bill in Equity and to Pierce the Corporate Veil of defendant Lancia LLC and Frank Lancia in order to satisfy the judgment against the defendants' alleged alter ego, F.G.L.

    **B. Findings of Fact**

Frank Lancia was the sole owner, director and officer of Lancia LLC. Lancia LLC stopped doing business in May 2008 and no longer is soliciting bids to obtain work. Lancia LLC has an open bank account at Eagle Bank but the account contains no money. Lancia LLC has no accounts receivable. F.G.L. was incorporated by Mr. Lancia on March 27, 2008. Mr. Lancia serves as

F.G.L.'s president, and performs all the hiring and firing of employees. The other owners are Cheryl Lancia, Mr. Lancia's wife, and Chris and Lisa Hetley. Defendant Lancia provided 80% of the capital to form F.G.L. ($800.00) and Lisa Hetley provided the remaining 20% ($200.00). A foreman directs the employees' work in the field and Mr. Lancia at times works "on the bench."

Both defendant Lancia LLC and F.G.L. engage in the business of making custom furniture. F.G.L. uses the hand and power tools owned by defendant Lancia LLC, which are encumbered by a Bank of America UCC filing. Defendant Lancia LLC and F.G.L. share the same address. Three of the six current employees of F.G.L. worked for defendant Lancia LLC in the past. Chris Hetley is an owner and employee of F.G.L. and "does audio video components" for it. Lancia Dep. of Jan. 8, 2009 at 15. Chris Hetley formerly "did some component work" for Lancia LLC. Id. As of January 2009, F.G.L. had performed approximately ten jobs for residential customers, one or two of whom may have been customers of Lancia LLC. Id. at 18.

Like defendant Lancia LLC, F.G.L. banks at Eagle Bank, and F.G.L. uses the same accountant as Lancia LLC. F.G.L.'s insurance agent was at one time in the past the insurance agent of defendant Lancia LLC.

**C. Conclusions of Law**

This matter is governed by ERISA, 29 U.S.C. §§ 1132(a)(3)(ii) and 1145. Jurisdiction and venue are proper in this Court.

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir.), cert. denied, 510 U.S. 1019 (1993) (citation omitted). The Eighth Circuit has "recognized the availability of the creditor's bill in equity

3

under Missouri law." Id. The creditor's bill in equity is a long-recognized but infrequently used tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989). The creditor's bill has its roots in equity jurisprudence, and remains viable in modern times. Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained. Fleming Cos., Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997).

"A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)). A creditor's bill in equity under Missouri law "enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" H.H. Robertson Co., 994 F.2d at 477 (quoting Shockley v. Harry Sander Realty Co., 771 S.W.2d 922, 925 (Mo. Ct. App. 1989)). The Missouri alter ego standard applies to such claims. Id.; see also Mobius Management Sys., Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186, 189 (Mo. Ct. App. 2005). Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. Mid-Missouri Tel. Co. v. Alma Tel. Co., 18 S.W.3d 578, 582 (Mo. Ct. App. 2000).

To pierce the corporate veil under Missouri law and recover from the assets of a corporation's alter ego, a creditor must show that the alter ego has "control" of the entity's finances, policy, and

4

business practices with respect to the transaction at issue. Mobius, 175 S.W.3d at 188. The necessary control is not "mere majority or stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will or existence of its own." Id. (citing 66, Inc. v. Crestwood Commons Redev. Corp., 998 S.W.2d 32, 40 (Mo. 1999) (en banc). The plaintiff must show that the corporation is the alter ego of the defendant. Mobius, 175 S.W.3d at 188. "When a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it, the court will disregard the corporate form if its retention would result in injustice." Id.

The creditor must also show a "breach of duty--that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights" that caused the injury to the plaintiff. Id. at 188-89. In addition, "the corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors. Inadequate capitalization is circumstantial evidence of an improper purpose or reckless disregard for the rights of others." Mobius, 175 S.W.3d at 189 (citations and internal citation omitted). Finally, the plaintiff must show that the control and breach of duty proximately caused the injury or unjust loss. Id.

In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, this Court looks to a number of factors, including the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations. See Operating Engineers Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., 2002 WL 1492103, at *6 (W.D. Mo. Mar. 11, 2002); see also H.H. Robertson Co. v. V.S. DiCarlo General Contractors,

5

789 F. Supp. 998, 1000 (E.D. Mo. 1992); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 774 (Mo. Ct. App. 1994).

The first element of the test, control, is met in this case. Defendant Lancia was the sole director, owner and officer of Lancia LLC. It is undisputed that Mr. Lancia owns a controlling interest in F.G.L., serves as the corporation's president, and performs all of the hiring and firing of employees. Mr. Lancia's conduct of Lancia LLC and F.G.L. indicates that Mr. Lancia used his control over F.G.L. to avoid paying plaintiffs. Mr. Lancia formed F.G.L. shortly before he stopped doing business through Lancia LLC and while he and Lancia LLC owed money to plaintiffs. F.G.L. engages in the business of making custom furniture, as did Lancia LLC. Although Mr. Lancia contends that F.G.L.'s business is different because it also performs audio/video component installation, this contention is negated by his testimony that Chris Hetley previously performed component work for Lancia LLC. When Mr. Lancia gave Lancia LLC's tools to F.G.L., he extinguished Lancia LLC's ability to engage in the custom furniture making business, and thus to earn income which could be used to pay off its debts. The evidence is that F.G.L. operates from the same business address that Lancia LLC did, uses the same bank and accountant, employs some of Lancia LLC's former employees, and has performed work for some of Lancia LLC's former customers. Under these circumstances, plaintiffs have demonstrated the necessary control. Cf. Carpenters' Dist. Council of Greater St. Louis and Vicinity v. J & J Carpenter Contractors, LLC, 2009 WL 1161546, at *2 (E.D. Mo. Apr. 29, 2009) (new company formed by the wife of the defendant company's owner was the alter ego of the defendant company, where it received tools from the defendant company, operated at the same address, used the same bank and accountant, had some of the same employees, and performed work for some of the same customers).

Mr. Lancia asserts that the corporate veil cannot be pierced because the ownership structure of Lancia LLC and F.G.L. are different, as he owns only 75% of F.G.L. and three other individuals own the remainder. This difference is not dispositive. The Missouri Court of Appeals has stated that "just as the presence of complete [identity of] ownership does not in and of itself merit the piercing of the corporate veil, . . . likewise, the lack of [identity of] ownership is not in and of itself sufficient to prevent the piercing of the corporate veil." Collett v. American Nat'l Stores, Inc., 708 S.W.2d 273, 285 (Mo. Ct. App. 1986) (internal citation omitted; citing Camelot Carpets, Ltd. v. Metro Distrib. Co., 607 S.W.2d 746, 749 (Mo. Ct. App. 1980)). Missouri courts have found that corporations may be the alter egos of individuals or other corporations even though the ownership structure between them is different. See, e.g., Mobius, 175 S.W.3d at 188 (individual who owned 80% of corporation controlled it and corporate veil was properly pierced); Camelot, 607 S.W.2d at 748-50 (corporate veil pierced where individual who owned approximately fifty-five percent of the defendant corporation exercised "total domination and control" over its operations).

The second element, evidence that the control was used to violate a legal duty, is also met. The key occurrence is the formation of F.G.L. in late March 2008, shortly before Lancia LLC stopped doing business in May 2008, but before Lancia LLC and Mr. Lancia satisfied their debts to the plaintiffs. As stated above, F.G.L. is in the same business as Lancia LLC, uses the same tools, is located at the same address and has the same bank and accountant as Lancia LLC, and three of its six employees formerly worked for Lancia LLC. F.G.L. is merely a continuation of Lancia LLC. Lancia LLC had a positive legal duty under the collective bargaining agreement and federal law to make the required contributions to plaintiffs. Based on the facts listed above, particularly the timing of the creation of the new company and its continuation of Lancia LLC's business, the Court finds

and concludes that Frank Lancia abandoned Lancia LLC and started a new company, F.G.L., in order to avoid paying Lancia LLC's creditors.

The third element is met as this breach of duty has caused injury to plaintiffs, as their judgment against Lancia LLC has not been paid in full and has been rendered uncollectible as a result of the conduct described above.

**Conclusion**

Plaintiffs have shown that F.G.L. Custom Woodworking and Audio/Video, Inc. is the alter ego of defendants F. G. Lancia Custom Woodworking, LLC and Frank Lancia. Plaintiffs are thus entitled to a creditor's bill in order to satisfy the judgment against F. G. Lancia Custom Woodworking, LLC and Frank Lancia from the assets of their alter ego F. G. Lancia Custom Woodworking and Audio/Video, Inc.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil is **GRANTED**. [Doc. 64]

*/s/ Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  29th  day of September, 2009.