UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARPENTERS' DISTRICT COUNCIL OF ) <br> GREATER ST. LOUIS and VICINITY, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> F.G. LANCIA CUSTOM WOODWORKING, ) <br> LLC, et. al., ) <br> ) <br> Defendants. ) | No. 4:06-CV-1673 CAS |

## MEMORANDUM AND ORDER

This closed matter under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. §§ 1001, et seq., is before the Court on plaintiffs' Motion For a Creditor's Bill in Equity and to Pierce the Corporate Veil. Plaintiff Carpenters' District Council of Greater St. Louis and Vicinity is an unincorporated association comprised of and representing persons engaged in carpentry, joining and related activities and is a labor organization within the meaning of the National Labor Relations Act, and an employee organization within the meaning of ERISA. The other plaintiffs are various related trust funds which are employee benefit plans under ERISA, and the trustees and fiduciaries of those plans. Plaintiffs obtained a default judgment in this action against defendant F. G. Lancia Custom Woodworking, LLC ("Lancia Custom Woodworking") for unpaid contributions to the plans, and against Lancia Custom Woodworking and Frank Lancia for money due on a promissory note.

Plaintiffs seek to satisfy the remainder of their uncollected judgment against the defendants from assets of their alleged alter ego, Lancia's Fine Furniture and Cabinetry, LLC ("Lancia's Fine Furniture"). No response has been filed to the motion and the time to do so has passed. For the

following reasons, plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil will be granted.

**I. Procedural History**

On November 17, 2006, plaintiffs filed suit against defendant Lancia Custom Woodworking in order to collect delinquent contributions, liquidated damages, interest, attorneys' fees, and costs owed pursuant to collective bargaining agreements and under the terms of ERISA, 29 U.S.C. § 1132. On January 18, 2007, plaintiffs filed an amended complaint which added Frank Lancia as a defendant and asserted a claim against Lancia Custom Woodworking and Mr. Lancia for sums due under a promissory note. On June 5, 2007, this Court entered a default judgment against defendant Lancia Custom Woodworking for unpaid contributions in the amount of $46,842.17, and a default judgment against Lancia Custom Woodworking and Frank Lancia, jointly and severally, on the promissory note in the amount of $87,105.14, together with attorney's fees and costs of $1,051.55 (Doc. 16).

In September 2009, the Court granted plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil of a new corporation F.G.L. Custom Woodworking and Audio/Video, Inc. ("Lancia Audio/Video"), as the alter ego of Lancia Custom Woodworking and Frank Lancia.[1] See Mem. and Order of Sept. 29, 2009 (Doc. 77), 2009 WL 3160576.

Plaintiffs have only been able to collect $58,837.89, leaving $76,160.97 of the judgment amount unpaid. Plaintiffs issued execution against Lancia Custom Woodworking and Lancia Audio/Video in August 2014, but the garnishment was returned with the response that no funds were available. Plaintiffs now seek a creditor's bill against Lancia Fine Furniture.

---

[1]The Court will occasionally refer to Lancia Custom Woodworking and Lancia Audio/Video collectively as the "Lancia companies" or the "predecessor Lancia companies."

**II. Findings of Fact**

Defendant Frank Lancia was the sole owner and officer of defendant F.G. Lancia Custom Woodworking, LLC ("Lancia Custom Woodworking"). Lancia Custom Woodworking was in the business of making custom furniture and cabinetry. Lancia Custom Woodworking was bound to a collective bargaining agreement with the Carpenters District Council of Greater St. Louis which required it to submit monthly reports showing all hours worked by each covered employee and to make contributions to the Carpenters Pension and Health & Welfare Funds. Lancia Custom Woodworking failed to make the required contributions for the period of September 2006 through March 2007 and plaintiffs determined it owed contributions, liquidated damages and interest. In addition, Lancia Custom Woodworking and Frank Lancia as an individual executed a promissory note with plaintiffs for a $100,000 loan with 4% interest.

Lancia Custom Woodworking and Frank Lancia defaulted on the promissory note. Defendant Lancia Custom Woodworking stopped doing business in May 2008. On March 27, 2008, defendant Frank Lancia incorporated F.G.L. Woodworking and Audio/Video, Inc. ("Lancia Audio/Video"), which was in the business of making custom furniture and cabinetry and also cabinetry for audio and video equipment. Defendant Frank Lancia owned 75% of Lancia Audio/Video, Inc., served as the corporation's president, and performed all the hiring and firing of employees. The other owners were Cheryl Lancia, Frank Lancia's wife, and Chris and Lisa Hetley. Frank Lancia's sister Cecelia Lancia was the Secretary of Lancia Audio/Video and performed bookkeeping work for it. Plaintiffs obtained a creditor's bill in equity against Lancia Audio/Video in September 2009. See Mem. and Order of Sept. 29, 2009. However, plaintiffs' efforts to collect the entire judgment amounts from defendants Lancia Custom Woodworking, Frank Lancia and Lancia Audio/Video have not been successful.

In January 2014, Lancia Audio/Video, Inc. stopped doing business. (Deposition of Cecilia Lancia 21:19-22:2, Nov. 6, 2014) ("Lancia Dep."). Cecelia Lancia testified that Lancia Audio/Video ceased operations because it owed money to the Internal Revenue Service, which "told [Frank Lancia] he had to shut down." (Id. 71:14-72:2.) In January 2014, Lancia Fine Furniture was created. (Id. 7:2-3.) Lancia Fine Furniture is in the business of making custom furniture and cabinetry, but is trying to focus more on residential business rather than residential and commercial. (Id. 10:4-19.) Lancia Fine Furniture is wholly owned by Frank Lancia's sister, Cecilia Lancia. (Id. 6:24-7:1) As part of Cecilia Lancia's duties with Lancia's Fine Furniture, she performs the same bookkeeping duties as she did at Lancia Audio/Video. (Id. 15:19-24, 27:1:7.) Lancia's Fine Furniture conducts business out of the same location as did both Lancia's Custom Woodworking and Lancia Audio/Video. (Id. 11:8-12:2.) Frank Lancia works for Lancia's Fine Furniture in much the same supervisory role he performed with Lancia's Custom Woodworking and Lancia Audio/Video. (Id. 16:4-22, 33:19-34:2.)

All of Lancia's Fine Furniture's current or previous employees, which include Frank Lancia, Cecilia Lancia, Roger Friedman, Lisa Hetley, Mark Carroll, and Bill Chamberlain, were previously employed by Lancia's Custom Woodworking and/or Lancia Audio/Video. (Lancia Dep. 17:3-19:9.) A majority of Lancia's Fine Furniture's equipment is owned and or was used by Lancia's Custom Woodworking and Lancia Audio/Video. (Id. 20:8-21:9.) Lancia's Fine Furniture uses the same vehicles–Frank Lancia's truck and utility van–that were used by both Lancia's Custom Woodworking and Lancia Audio/Video. (Id. 28:14-29:14.). Lancia's Fine Furniture shares the use of common suppliers–McIntyre, Compi Distributors, St. Charles Hardwoods, Lowe's and Home Depot–with Lancia Audio/Video. (Id. 30:7-31:23.) Lancia's Fine Furniture utilizes the same bank,

4

First National, and the same accountant, Steve Shorely, as did Lancia Audio/Video. (Id. 25:21-26:24.)

**III. Discussion**

    A. Legal Standard

This matter is governed by ERISA, 29 U.S.C. §§ 1132(a)(3)(ii) and 1145, and the LMRA, 29 U.S.C. § 185(a). Jurisdiction and venue are proper in this Court.

Plaintiffs assert that Lancia Fine Furniture is an alter ego of Lancia Custom Woodworking and Lancia Audio/Video. If this is correct, then plaintiffs can pierce Lancia Fine Furniture's corporate veil and attempt to collect from it the judgment they hold against Lancia Custom Woodworking and Frank Lancia. The alter ego doctrine developed under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., focuses "on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997) (quoted case omitted); see also Trustees of the Graphic Commc'ns Int'l Union Upper Midwest v. Bjorkedal, 516 F.3d 719, 727 n.2 (8th Cir. 2008) (citing cases). "The essential inquiry under the alter ego analysis is '[w]hether there was a *bona fide* discontinuance and a true change of ownership . . . or merely a disguised continuance of the old employer.'" Iowa Express Distr., Inc. v. N.L.R.B., 739 F.3d 1305, 1310 (8th Cir. 1984) (quoting Southport Petroleum Co. v. N.L.R.B., 315 U.S. 100, 106 (1942)).

"In determining whether two business entities are alter egos, . . . courts consider a variety of factors, including whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Midwest Precision Heating and Cooling, Inc. v. N.L.R.B., 408 F.3d 450, 458 (8th Cir. 2005) (cited case omitted). In the alter

5

ego analysis, "one of the most important [factors] is the existence of continued control or ownership by the owner of the discontinued company. Iowa Express Distr., 739 F.3d at 1310 (cited case omitted). Another key factor is "whether a motive for the new entity's taking over of the operations of the old entity was to evade responsibilities under the Act and whether dealings between the two entities were at arm's length." Midwest Precision Heating, 408 F.3d at 458-59 (cited case omitted). This test is flexible, so the lack of any particular factor does not preclude a finding of alter ego status. Id. at 459 (citing N.L.R.B. v. Campbell-Harris Elec., Inc., 719 F.2d 292, 296 (8th Cir. 1983) (affirming NLRB finding that ownership and management of first company, a two-man partnership, was substantially identical to that of second company, a sole proprietorship)).

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993) (citation omitted). The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." Id. The creditor's bill in equity is a long-established tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989).

Prerequisites to the issuance of a creditor's bill are the "existence of a judgment, the issuance of an execution against assets of the judgment debtor and a nulla bona return thereon." Id. at 925. The fact that a corporation's alleged alter ego was not itself either a judgment debtor or a party in the original action is irrelevant. H.H. Robertson Co., 994 F.3d at 478. Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained. Fleming Cos., Inc. v. Rich, 978 F. Supp. 1281,

6

1294 (E.D. Mo. 1997). "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)).

B. Factors Relevant to Alter Ego Status

Plaintiffs have established the necessary prerequisites to the issuance of a creditor's bill, as they have a judgment against Lancia Custom Woodworking and Frank Lancia, and a Creditor' Bill in Equity against Lancia Audio/Video, they issued execution against their assets at First National Bank of St. Louis and PNC Bank, and the garnishments were returned with the response that Lancia Custom Woodworking, Frank Lancia and Lancia Audio/Video had no funds. To prevail on their motions, plaintiffs must also establish that Lancia's Fine Furniture is the alter ego of Lancia Custom Woodworking and Lancia Audio/Video.

Plaintiffs contend that Lancia's Fine Furniture is an alter ego of Lancia Custom Woodworking and Lancia Audio/Video because of the commonality of (1) ownership, (2) management and supervision, (3) business purpose, (4) operations, (5) employees, (6) equipment, and (7) facilities. Plaintiffs also argue that Lancia's Fine Furniture was formed to allow Lancia Custom Woodworking, Frank Lancia and Lancia Audio/Video to avoid their obligations under the collective bargaining agreement and guarantee after plaintiffs attempted to collect their judgment.

*1. Ownership*

Frank Lancia owned both Lancia's Custom Woodworking and Lancia Audio-Video. Cecilia Lancia, owner of Lancia's Fine Furniture, is Frank Lancia's sister. Separate corporations share common ownership when they share a familial tie. See N.L.R.B. v. Stowe Spinning Co., 336 U.S. 226, 227 (1949) ("Interlocking directorates and family ties make the four [companies] equal one for

7

our purposes."); N.L.R.B. v. Dane County Dairy, 795 F.2d 1313, 1322 (7th Cir. 1986) ("Familial control constitutes common ownership and control."); Truck & Dock Servs., Inc., 272 N.L.R.B. 592, 592 n.2 (1984) (finding two companies separately owned by a father and son shared common ownership; stating "the [National Labor Relations] Board often treats ownership by other family members as personal ownership."). See also Carpenters Dist. Council of Greater St. Louis and Vicinity v. Neier Services Co., Inc., 2015 WL 3971070, at *7 n.7 (E.D. Mo. June 30, 2015) (citing Dane County Dairy, Greater St. Louis Constr. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc., 552 F.Supp.2d 952, 955 (E.D. Mo. 2007) (spousal connection between owners establishes common control ownership); and Greater St. Louis Constr. Laborers Welfare Fund v. Kirkwood Masonry, Inc., 2014 WL 1048597, at *3 (E.D. Mo. Mar. 14, 2014) (businesses deemed to have common control ownership where owned by brothers-in-law)).

Because of the familial relationship between Frank Lancia and Cecelia Lancia, and considered the foregoing precedent, the Court finds that Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture have continued control by Frank Lancia and therefore have common ownership. This factor is very significant in the alter ego analysis, Iowa Express Dist., 739 F.3d at 1310, and weighs strongly in favor of alter ego status.

    *2. Management and Supervision*

Frank Lancia controlled the day-to-day operations and was President of both Lancia Custom Woodworking and Lancia Audio-Video. As part of controlling the day-to-day operations, Mr. Lancia supervised employees and bid on jobs. Similarly, Frank Lancia's role in Lancia's Fine Furniture is to supervise employees and to bid on jobs; he also is in sales, deals with suppliers, spends ten to fifteen percent of his time fabricating cabinets and, rarely, visits job sites. Cecilia Lancia testified she is the manager of day-to-day operations for Lancia's Fine Furniture "as far as

. . . books, the accounts payable, accounts receivable, payroll, human resources, ordering." (Lancia Dep. 15:16-24.) Cecilia Lancia testified that Frank Lancia supervises the employees as he "just makes sure that when the morning starts that Roger knows what he's doing, that the finisher knows what they're doing, that what he's doing [sic], and just make[s] sure that everybody's in place of what they're doing. Day-to-day, I'm in there supervising, and walking the floor[.]" (Id. 33:19-34:2.) Cecelia Lancia testified she has no prior business experience and admitted in her deposition that she is still learning aspects of her position. (Id. 27:18-25, 34:21-35:1, 47:21-25, 67:13-18.)

It is apparent that Cecelia Lancia, although she was previously the bookkeeper for Lancia Audio/Video and may have gained considerable experience in running Lancia's Fine Furniture since January 2014, lacks overall management experience in the day-to-day operation of the business. For Lancia's Fine Furniture to succeed in business on the short notice with which it was set up, it is obvious that Frank Lancia had to supply and continue to supply the management knowledge and business experience which his sister lacked, until such future time as she might be ready to take over the business herself. Ms. Lancia's testimony that she walks around the production floor and supervises is entitled to little weight in light of her admission that Frank Lancia is the person who actually tells all of the workers what to do every morning. The Court finds that Frank Lancia is the "dominant figure" in managing both Lancia Audio/Video and Lancia's Fine Furniture, as well as Lancia Custom Woodworking prior to that.

Where the same individual is the "dominant figure" in managing two separate companies, this is highly indicative of alter ego status. See C.E.K. Indus. Mech. Contractors, Inc. v. N.L.R.B., 921 F.2d 350, 355 (1st Cir. 1990) (affirming NLRB's finding of alter ego relationship where the companies' sole owner "controlled labor relations" at both and "was the ultimate decision-maker on financial and operational matters for both"); Rogers Cleaning Contractors, Inc., 277 N.L.R.B.

9

482, 482, 488 (1985) (alter ego status found where majority owner and manager of first company had no ownership interest in second company, owned by his daughters, but dominated its management); H.S. Brooks Electric, Inc., 233 N.L.R.B. 889, 893 (1977) (alter ego status found where individual who owned first company and controlled its operations, including bidding for jobs and performing onsite supervision of employees, performed the same functions for the second company although it was owned solely by his wife).

Because Frank Lancia is the dominant figure in Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture, the management/supervision factor weighs in favor of alter ego status.

### 3. Business Purpose

Lancia Custom Woodworking, Lancia Audio-Video and Lancia's Fine Furniture share a common business purpose of manufacturing custom wood cabinetry and furniture. (Lancia Dep. 10:4-19.) Although Ms. Lancia testified that Lancia's Fine Furniture intends to focus more on residential work than commercial, the phrase "common business purpose" does not require that each and every service performed by two companies be identical. See Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 929-30 (8th Cir. 1984) (finding two companies were alter egos even though the first business performed mostly residential masonry work and the second performed mostly commercial masonry work); Evans Plumbing Co., 278 N.L.R.B. 67, 68 (1986) (concluding two plumbing companies possessed a common business purpose of a plumbing concern, "notwithstanding the nonengagement of [the second company] in large commercial plumbing jobs.").

Because Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture share a common business purpose of manufacturing custom wood cabinetry and furniture, this factor weighs in favor of alter ego status.

   *4. Operations*

The facts indicate Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture share common operations. Lancia Audio/Video and Lancia's Fine Furniture bank or banked at First National Bank of St. Louis and also utilized Steve Shorely as their accountant. (Lancia Dep. 25:21-26:24.) See Neier Services, Inc., 2015 WL 3971070, at *8 (fact that two companies "utilized the same accountant and had their accounts in the same bank" was a factor weighing in favor of alter ego status). Lancia's Fine Furniture utilizes the same suppliers (McIntyre, Compi Distributors, St. Charles Hardwoods, Lowe's, Home Depot) as did Lancia Audio/Video. (Lancia Dep. 30:5-31:23). Further, Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture share a similar name. All three companies have the name "Lancia" in their title, thus enabling them to maintain name recognition while attempting to avoid the liabilities of Lancia's Custom Woodworking and Lancia Audio/Video. See Beetz v. R.W. Hodges Plumbing, Inc., 1993 WL 632270, at *6 (E.D. Mo. Nov. 24, 1993).

For these reasons, the common operations factor weighs in favor of alter ego status.

   *5. Employees*

Another factor relevant to the alter ego analysis is "whether there is a substantial continuity of the work force from the union to the non-union employer." Iowa Express Distr., 739 F.3d at 1310 (citing Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.3d 489, 508 (5th Cir. 1982)). Employee overlap has been found to be a significant factor in determining an employer's alter ego status. See Beetz, 1993 WL 632270, at *8 (it was important to alter ego analysis that "both

[businesses] used the same key persons in their operations,"); Acme Roofing Co., 283 N.L.R.B. 139, 141 (1986) (finding significant that new company had a "cadre of employees drawn from the former [company's] complement"); Hawg-N-Action, Inc., 281 N.L.R.B. 56, 61, 63 (1986) (basing alter ego finding in part on second company's use of some of the same employees in the same job classifications).

Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture are further interconnected by significant commonality of their employees. All three companies either employ or have employed Frank Lancia, Cecilia Lancia, Roger Friedman, Lisa Hetley, Mark Carroll and Bill Chamberlain. (Lancia Dep. 17:2-19:9, 31:24-32:23.) Each of these employees performs the same job duties for Lancia's Fine Furniture as they did for Lancia Custom Woodworking and/or Lancia Audio-Video and constitute a large portion of the companies' total employees. (Id.) Mr. Friedman was employed as a cabinet maker for Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture. (Id. 17:19-18:7.) Ms. Hetley was employed by both Lancia Audio/Video and Lancia's Fine Furniture as a drafter. (Id. 18:8-15.) Mr. Carroll was employed by both Lancia Audio/Video and Lancia's Fine Furniture as a finisher. (Id. 18:16-19:9). Mr. Chamberlain was employed by both Lancia Audio/Video and Lancia's Fine Furniture as a cabinetmaker. (Id. 32:5-23.) Cecilia Lancia worked for Lancia Audio/Video as a bookkeeper and Secretary and continues to perform bookkeeping duties for Lancia's Fine Furniture. (Id. 15:16-24, 27:4-7.) Finally, Frank Lancia was the operator and President who controlled the day-to-day operations of Lancia's Custom Woodworking and Lancia Audio/Video and is the supervisor and de facto manager of Lancia's Fine Furniture. (Mem. and Order of Sept. 29, 2009 at 2-3, 2009 WL 3160576, at *3; Lancia Dep. 16:19-22; 33:19-34:2, 34:18-35:8.)

The existence of a significant overlap in common employees among the Lancia companies is another factors that weighs in favor of alter ego status.

### 6. *Equipment*

The use of common equipment is also significant to the existence of an alter ego relationship. Midwest Precision Heating, 408 F.3d at 458; see, e.g., Neier Services, Inc., 2015 WL 3971070, at *14 (two companies' use of some of the same equipment and vehicles was a factor weighing in favor of alter ego status); Bruemmer v. Steven P. Amick, Inc., 4:99-CV-494 MLM, slip op. at 11-12 (E.D. Mo. May 2, 2000) (company's use of tools, equipment and vehicles it purchased from first company at market value was one factor establishing alter ego status); see also Kirkwood Masonry, Inc., 2014 WL 1048597, at *3 (first company's sale of equipment to second company, which did not research the equipment's market value, was a factor supporting a finding that individual exercised control over both companies).

Here, the equipment used by Lancia's Fine Furniture is owned and/or was used by both Lancia Custom Woodworking and Lancia Audio/Video.[2] (Lancia Dep. Tr. 20, 24). Cecelia Lancia testified that Lancia's Fine Furniture owns no real or personal property, (Id. 49:1-6), and is using equipment that was "abandoned" by the other Lancia companies. (Id. 56:12-20.) There was no bill of sale or sale of equipment from Lancia Custom Woodworking or Lancia Audio/Video to Lancia's Fine Furniture. (Id. 56:12-20, 60:25-61:7.) The equipment is still owned by those companies and is subject to Bank of America liens, although Lancia's Fine Furniture is not making any payments on it. (Id. 76:3-13.) Although Cecelia Lancia testified the equipment Lancia's Fine Furniture is

---

[2]The Court previously found that Frank Lancia gave the hand and power tools that belonged to Lancia Custom Woodworking to Lancia Audio/Video. See Mem. and Order of Sept. 29, 2009 at 3, 6; 2015 WL 3160576, at *2, *3. Frank Lancia testified that all of Lancia Custom Woodworking's equipment was subject to Bank of America UCC filings. (Frank Lancia Dep. of Jan. 18, 2008 at 12:3-7) (Doc. 65-4).

using is old, has been repeatedly repaired and is of little value, she also testified it would be very costly to replace and is essential to the business, and admitted she did not really know its value. (Id. 61:14-62:1, 72:3-73:2.) Ms. Lancia testified it would cost $50,000 to replace the "C & C" machine, a computerized routing machine center that cuts and designs pieces of wood into desired shapes. (Lancia Dep. 72:3-18; Frank Lancia Dep. 11:16-12:2) (Doc. 65-4).) Further, Frank Lancia testified in 2008 that the C&C router was worth $20,000-$30,000, a panel saw was worth $10,000-$12,000, and an edge bander was worth $12,000-$13,000. (Frank Lancia Dep. 11:8-12:25.) Lancia's Fine Furniture also shares with Lancia Audio/Video the use of common vehicles, a truck and utility van owned by Frank Lancia. (Cecelia Lancia Dep. 28:14-17.)

All of the equipment Lancia's Fine Furniture uses in its business belongs to either Lancia Audio/Video or Lancia Custom Woodworking, and the vehicles it uses belong to Frank Lancia. Lancia's Fine Furniture would not be able to engage in its business without the equipment and vehicles, which it is using free of charge. The fact that Lancia's Fine Furniture did not purchase the equipment and vehicles, and that these still belong to the predecessor Lancia companies and Frank Lancia, weighs strongly in favor of a finding of alter ego status.

*7. Facility*

Another factor indicative of common control is companies' use of the same facilities. See, e.g., Greater St. Louis Constr. Laborers Welfare Fund v. Marshall-Long, LLC, No. 4:04-CV-988 CDP, slip op. at 5 (E.D. Mo. May 8, 2006) (fact that new corporation used same physical address as debtor corporation was a factor in determining that corporate veil should be pierced). Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture all operate or operated out of the same address, 813 North Skinker Boulevard in St. Louis. The property is owned by Gabriel Lancia, Frank and Cecelia's father. (Lancia Dep. 11:9-12:2.) Based on the closure date of Lancia

14

Audio/Video and the organization date of Lancia's Fine Furniture, it is evident that when Lancia Audio-Video ceased doing business, Lancia's Fine Furniture immediately started operations out of the same location with a slightly different name.

Because of the commonality of ownership, management and supervision, business purpose, operations, employees, customers, equipment, and facilities, the Court finds and concludes that Lancia Custom Woodworking, Lancia Audio/Video and Lancia's Fine Furniture are alter egos.

C. Lancia's Fine Furniture Was Formed to Evade Responsibilities Under ERISA

Cecilia Lancia testified she started Lancia's Fine Furniture to continue the family tradition her father started 40 years ago with his woodworking shop and to support her four children as a single parent, after her brother Frank Lancia announced his intention to abandon Lancia Audio/Video's business. (Lancia Dep. 55:6-56:6.) Ms. Lancia also testified she had "no money" at the time and that Lancia's Fine Furniture had no source of capital. (Id. 9:1-3, 55:18-20.) Although Cecelia Lancia denied that plaintiffs' judgment had anything to do with Lancia Audio/Video going out of business, she admitted that Lancia Audio/Video ceased operations because of its unpaid obligations to the Internal Revenue Service.

Considering the debts of Lancia Custom Woodworking and Lancia Audio/Video, Lancia's Fine Furniture's multiple commonalities with those companies as detailed above, Ms. Lancia's lack of previous business ownership or management experience and her lack of capital to begin or operate a business, the Court finds her testimony not credible as to the reasons she formed Lancia's Fine Furniture. The Court is also cognizant that Frank Lancia has previously attempted to avoid the obligations owed to plaintiffs by forming a new company. The facts support the conclusion that Lancia's Fine Furniture was created as a vehicle to avoid debt and commit fraud.

Much like this Court found in Bruemmer, 4:99-CV-494 MLM, slip op. at 14, it finds here that Lancia's Fine Furniture was created as a vehicle for Lancia Custom Woodworking and Lancia Audio/Video to continue in business while avoiding obligations under the collective bargaining agreement with the Carpenters District Council and the Judgment entered in favor of plaintiffs on June 5, 2007. Defendant F.G. Lancia Custom Woodworking, LLC stopped doing business in May 2008. On March 27, 2008, defendant Frank Lancia incorporated F.G.L. Woodworking and Audio/Video, Inc. On September 29, 2009, this Court granted plaintiff's motion for a creditor's bill in equity and to pierce the corporate veil of F.G.L. Custom Woodworking and Audio/Video, Inc., finding it to be the alter ego of defendants F. G. Lancia Custom Woodworking, LLC and Frank Lancia. In January 2014, F.G.L. Woodworking and Audio/Video, Inc. stopped doing business. In January 2014, Lancia's Fine Furniture was created, with common ownership and the same business purpose, management and supervision, operations, employees, equipment and facilities as the predecessor Lancia companies. The temporal proximity of all of these actions, and the facts discussed above showing that Lancia's Fine Furniture is a mere continuation and alter ego of the predecessor Lancia companies, establish that it was created for the reason of avoiding Lancia Custom Woodworking and Lancia Audio/Video's obligations and debt owed to the plaintiffs.

## IV. Conclusion

The Court finds that control of Lancia Custom Woodworking, its alter ego Lancia Audio/Video, and Lancia's Fine Furniture was substantially identical at the time Lancia's Fine Furniture was formed and went into business. Further, the three Lancia companies have common business purpose, management and supervision, operations, employees, equipment, and facilities. Finally, the Court finds that Lancia's Fine Furniture was created in order to avoid the obligations

and debts owed by Lancia Custom Woodworking, Frank Lancia, and Lancia Audio/Video to the plaintiffs under ERISA.

In summary, operating under the name of Lancia's Fine Furniture, the business of the closed Lancia Audio/Video and Lancia Custom Woodworking "continued under the same roof with the same employees and management, the same business, same customers, same equipment. The only change really was that of the name of the business and a shuffling of ownership among the family." Rogers Cleaning Contractors, 277 N.L.R.B. at 488.

As a result, the Court concludes that Lancia's Fine Furniture is the alter ego of both F. G. Lancia Custom Woodworking, LLC and F.G.L. Custom Woodworking and Audio/Video, Inc. Plaintiffs are therefore entitled to a creditor's bill in equity in order to satisfy the judgment they hold against F. G. Lancia Custom Woodworking, LLC and Frank Lancia from the assets of Lancia's Fine Furniture and Cabinetry, LLC.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil is **GRANTED**. [Doc. 142]

                                                  **CHARLES A. SHAW**
                                                  **UNITED STATES DISTRICT JUDGE**

Dated this  21st  day of December, 2015.